UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIVA STEIN, | Civil Action No. 1:21-cv-6248 |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| LYDALL, INC., MARC T. GILES, SARA A. GREENSTEIN, DAVID G. BILLS, JAMES J. CANNON, PAUL W. GRAVES, SUZANNE HAMMETT, and KATHERINE C. HARPER, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Lydall, Inc. ("Lydall or the "Company") and the members Lydall board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Lydall by Unifrax Holding Co. ("Unifrax") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on July 21, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction

whereby Outback Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Unifrax, will merge with and into Lydall with Lydall surviving the merger and becoming a wholly owned subsidiary of Unifrax (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Lydall common share issued and outstanding will be converted into the right to receive $62.10 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Lydall stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, BofA Securities, Inc. ("BofA") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Lydall stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the closing of the Proposed Transaction will take place in this District, at the offices of Lydall's legal advisor, Davis Polk & Wardwell LLP. 450 Lexington Avenue, New York, NY 10017, and Lydall is traded on the New York Stock Exchange, which is headquartered in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of Lydall common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Marc T. Giles has served as a member of the Board since April 2008 and Chairman of the Board since April 2017.

11. Individual Defendant Sara A. Greenstein has served as a member of the Board since November 2019 and is the Company's President and Chief Executive Officer.

12. Individual Defendant David G. Bills has served as a member of the Board since April 2018.

13. Individual Defendant James J. Cannon has served as a member of the Board since April 2017.

14. Individual Defendant Paul W. Graves has served as a member of the Board since April 2021.

15. Individual Defendant Suzanne Hammett has served as a member of the Board since January 2000.

16. Individual Defendant Katherine C. Harper has served as a member of the Board since April 2021.

17. Defendant Lydall is incorporated in Delaware and maintains its principal offices at One Colonial Road, Manchester, Connecticut 06042-2307. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "LDL."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A. The Proposed Transaction**

20. Lydall designs, manufactures, and markets specialty engineered filtration media, industrial thermal insulating solutions, and automotive thermal and acoustical barriers for filtration/separation and thermal/acoustical applications worldwide. It operates through Performance Materials, Technical Nonwovens, and Thermal Acoustical Solutions segments. The Performance Materials segment offers filtration media solutions for air, fluid power, life science and industrial applications, gasket and sealing solutions, thermal insulation, energy storage, and other engineered products. This segment also nonwoven veils, papers, and advanced composite

solutions comprising thermal insulation papers and insulation media for high temperature technology applications; and life sciences filtration products for biopharmaceutical diagnostic and analytical testing, potable water filtration, and high purity process filtration in food, beverage, and medical applications. The Technical Nonwovens segment offers nonwoven rolled-good felt media and filter bags used primarily in industrial air and liquid filtration applications. The Thermal Acoustical Solutions segment offers engineered products for transportation sector to thermally shield sensitive components from high heat, improve exhaust gas treatment, and lower harmful emissions, as well as assist in the reduction of noise, vibration, and harshness. Its products are used in the interior, underbody, and underhood of cars, trucks, SUVs, heavy duty trucks, and recreational vehicles. The company markets its products to original equipment manufacturers, Tier 1, Tier 2, and Tier 3 industrial customers. Lydall, Inc. was founded in 1879 and is headquartered in Manchester, Connecticut.

21. On June 21, 2021, Lydall and Unifrax jointly announced that they had entered into a proposed transaction:

> TONAWANDA, N.Y. and MANCHESTER, Conn., June 21, 2021 (GLOBE NEWSWIRE) -- Unifrax, a leading global provider of high-performance specialty materials focused on thermal management, specialty filtration, battery materials, emission control and fire protection applications backed by Clearlake Capital Group, L.P. ("Clearlake"), today announced it has signed definitive agreements to acquire Lydall, Inc. (NYSE: LDL, "Lydall" or the "Company"), a leader in the design and production of specialty filtration materials and advanced material solutions. With its leading technologies and 23 manufacturing facilities around the world, Lydall is well positioned to capitalize on growth in clean air filtration and electric vehicle adoption, among many other attractive markets. Under the terms of the agreement, Lydall shareholders will receive $62.10 per share in cash for each share outstanding, implying a total enterprise value of approximately $1.3 billion.

"The combination of Unifrax and Lydall creates a global specialty materials platform with new cutting edge technologies in advanced filtration, electric vehicle battery systems, and energy saving applications," said John Dandolph, President and CEO of Unifrax.

"The addition of Lydall's people, technologies, and assets to the Unifrax portfolio will help accelerate our innovation pipeline and creates a world class platform capable of solving the world's most pressing energy consumption, environmental and filtration challenges. We are excited to partner with a company that is similarly focused on our commitment to a Greener, Cleaner, and Safer® world."

Sara Greenstein, President and CEO of Lydall, added, "We are excited about the combination of Lydall and Unifrax. With this transaction, we are creating a leader in specialty filtration and advanced materials with over 250 years of combined expertise and experience delivering innovative and compelling solutions to customers worldwide."

"We have long admired Lydall and what it would bring to our platform investment in Unifrax, and could not be more excited about partnering with the Company and its team to build one of the world's leading global specialty materials platforms," said José E. Feliciano, Co-Founder and Managing Partner at Clearlake, and Colin Leonard, Partner at Clearlake, in a joint statement. "We have supported Unifrax's development of new technologies over the last few years that have the potential to change how we think about the industries in which both Unifrax and Lydall operate and inform their futures. The addition of Lydall to the Unifrax portfolio and its strong capabilities in advanced filtration creates a global platform with significant scale that together can accelerate each company's respective compelling growth plans."

Morgan Stanley & Co. LLC acted as lead financial advisor, J.P. Morgan acted as financial advisor, and Kirkland & Ellis acted as legal counsel to Unifrax in the transaction. BofA Securities is acting as exclusive financial advisor, and Davis Polk & Wardwell LLP is acting as legal counsel to Lydall in connection with the transaction.

* * *

22. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Lydall's stockholders are provided with the material information that has been

omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

23.    On July 21, 2021, Lydall filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Lydall Financial Projections*

24.    The Proxy Statement fails to provide material information concerning financial projections by Lydall management and relied upon by BofA in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Lydall management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's

7

inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Proxy Statement provides values for a non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metric and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

28. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

29. In addition, the Proxy Statement fails to disclose the reason why Unlevered Free Cash Flow was not calculated for the Aspirational Case.

*Omissions and/or Material Misrepresentations Concerning BofA's Financial Analysis*

30. With respect to BofA's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by BofA in the analysis.

31. With respect to BofA's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by BofA in the analysis.

32. With respect to BofA's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the use of EBITDA multiples of 7.0x to 9.0x to Lydall's fiscal year 2025 estimated EBITDA; and (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.0% to 12.0%.

33. With respect to BofA's price targets analysis, the Proxy Statement fails to disclose the Wall Street analysts observed, and the corresponding price targets.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

34. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by BofA and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

40. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT II**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of Lydall within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Lydall, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Lydall, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Lydall, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the

Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 22, 2021

**MELWANI & CHAN LLP**

By: <u>/s *Gloria Kui Melwani*</u>
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*